The STATE of Ohio, Appellee,

v.

HILL, Appellant.

[Cite as *State v. Hill* (2000), 136 Ohio App.3d 636.]

Court of Appeals of Ohio,
Fifth District, Fairfield County.

No. 98CA67.

Decided Feb. 18, 2000.

*David L. Landefeld*, Fairfield County Prosecuting Attorney, and *Gregg Marx*, Assistant Prosecuting Attorney, for appellee.

*Carol A. Wright; Vorys, Sater, Seymour & Pease, L.L.P., James E. Phillips* and *Timothy W. Hoover,* for appellant.

FARMER, Judge.

On September 25, 1997, the Fairfield County Grand Jury indicted appellant, Clifton Hill, on one count of aggravated murder with two firearm specifications in violation of R.C. 2903.01, one count of grand theft of a motor vehicle in violation of R.C. 2913.02, one count of fleeing and eluding in violation of R.C. 2921.331, and one count of having a weapon while under disability with a firearm specification in violation of R.C. 2923.13. The charges arose from the death of appellant's stepfather, Harry Sisco, on September 15, 1997.

A jury trial commenced on September 1, 1998. The jury found appellant guilty as charged except for the grand theft count where the jury found appellant guilty of the lesser included offense of unauthorized use of a motor vehicle in violation of R.C. 2913.03. By judgment entry filed September 24, 1998, the trial court sentenced appellant on the aggravated murder conviction to life imprisonment with parole eligibility after twenty years, plus eight years mandatory incarceration for the firearm specifications, to be served consecutively. The trial court also sentenced appellant to terms of seventeen months and eleven months for fleeing and eluding and having a weapon while under disability to be served consecutively to the aggravated murder sentence.

Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:

"I. Defendant's due process rights were violated when the prosecution submitted evidence of the defendant's invocation of his right to silence and emphasized that invocation in closing argument. This violated defendant's rights as guaranteed by the Fifth, Sixth and Fourteenth Amendments under the United States Constitution and Article I, [Sections] 2, 10 and 16 of the Ohio Constitution.

"II. The trial court erred in admitting cumulative, extensive inadmissible hearsay evidence to prove the truth of the matter asserted in violation of the evidence rules. The admission of these statements violated appellant's right to confront witnesses against him and violated both the United States and Ohio Constitutions.

"III. Appellant was denied the effective assistance of counsel as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, [Sections] 2, 10 and 16 of the Ohio Constitution by numerous acts and omissions of his trial counsel.

"IV. The trial court erred in modifying appellant's sentence outside of his presence in violation of Crim.R. 43 and the guarantees of both the federal and state constitutions.

"V. The trial court erred in instructing the jury in response to a question during deliberations. the court's instruction was incorrect and denied appellant a fair trial. Further, the record is unclear as to what each question was or the answers that were ultimately given and thus denies appellant proper appellate review.

"VI. The trial court erred when it empaneled an anonymous jury in the absence of any evidence or findings that an anonymous jury was necessary in this case, thereby committing structural error in violation of appellant's due process rights under the United States Constitution, including his right to the presumption of innocence, and his right to a fair and impartial jury."

I

█ Appellant claims the state improperly introduced evidence of his invocation of his right to remain silent and improperly emphasized such during closing argument. We agree.

On direct examination, Detective David Bailey of the Lancaster Police Department testified as follows to his pre-interview (interview prior to tape recorded statement) with appellant and what appellant said:

"Q. And during that pre-interview, when you confronted him [appellant] about the homicide, the murder of Harry Sisco, what, if anything, did he say?

"A. I told him that Harry Sisco was the victim of a shooting homicide and he told me that's the first time that he heard it, that that had taken place. I then confronted him with some of the meager information that I had at that point about him being seen in the area, also about the argument prior to the homicide. And his exact words to me at that point were, 'You do what the fuck you have to. I'm not saying anything.' "

The state then attempted to play appellant's tape recorded statement to the jury. Defense counsel objected claiming appellant's *Miranda* rights had been violated. Defense counsel argued once appellant refused to talk, Bailey should have stopped the interview. The trial court recessed the jury and permitted a voir dire of Bailey regarding the circumstances surrounding the interview. Following the voir dire proceeding and argument from counsel, the trial court suppressed the entire tape recorded statement, ruling that:

"With the above case law in mind and considering the facts at bar, it appears that the Defendant's statement, 'I am not saying anything else,' is comparable to that of the Defendant Mosely's statement, and would comport with the Ohio Supreme Court's requirement of an affirmative statement by the suspect to terminate the interrogation. Moreover, the interrogating officer in this case stated in the suppression hearing that he understood the suspect's statement to

mean that he was asserting his right to silence with regard to the murder. Thus, the officer understood * * * that the Defendant was asserting his privilege against self-incrimination. It seems clear that based upon *Mosely* and upon several Ohio cases cited herein, that the Defendant did rescind his prior waiver, and pursuant to Miranda, the questioning should have ceased.

"It is important to note that unlike the *Mosely* facts where the officers honored the suspect's desire to remain silent only reinitiating questioning after a significant period of time and after obtaining a fresh waiver from the suspect, the interrogating officer in this case, sub judice, did not suspend the questioning, nor did he readvise the Defendant of his rights prior to immediately continuing the recorded interrogation. Accordingly, in the absence of such measures required under *Mosely*, the Defendant's statements subsequent to his rescission of the waiver must be suppressed."

Because of the unusual procedure *sub judice*, the jury heard appellant's request to terminate the interrogation before the trial court ruled on the motion to suppress. We note prior to the ruling that the state did not violate any *Miranda* ruling because none had been made. Although the trial court suppressed the tape recorded statement, the trial court permitted appellant's pre-interview statements up to the point where appellant had said "I'm not saying anything else."

The jury was then returned to the courtroom. No limiting instruction was given to the jury nor was any requested. Bailey resumed the stand. During his testimony, the state again brought up appellant's pre-interview statements and specifically elicited appellant's invocation of his right to remain silent as follows:

"A. Near the end of the early interview of the non-taped interview, I explained to him that Harry Sisco had died of a homicidal shooting and I told him that witnesses had placed him at the scene and that witnesses had discussed a serious argument or disagreement. And then I asked him if he was involved in it, and that's when the response occurred that I mentioned yesterday, sir.

"Q. And do you recall what that response was?

"A. That response was, 'Do you what the fuck you have to do. I'm not saying anything.'

"Q. And what was his demeanor at that point?

"A. It had changed from sort of anxious and nervous to hostile."

At no time did appellant take the witness stand. During closing argument, the state argued appellant's invocation of his right to remain silent as follows:

"And David Bailey told you, when he started asking him questions about what had happened to Harry Sisco, the tenor of the conversation changed. The

Defendant became hostile, is the way he described it. It changed. And I believe it was something to the effect of, 'You do whatever the fuck you have to do. I'm not saying anything.' "

Defense counsel did not object to these statements.

In *Wainwright v. Greenfield* (1986), 474 U.S. 284, 106 S.Ct. 634, 88 L.Ed.2d 623, the United States Supreme Court reaffirmed its holding in *Doyle v. Ohio* (1976), 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91, noting "[i]n *Doyle,* we held that *Miranda* warnings contain an implied promise, rooted in the Constitution, that 'silence will carry no penalty.' " *Wainwright* at 295, 106 S.Ct. at 640, 88 L.Ed.2d at 632, quoting *Doyle* at 618, 96 S.Ct. at 2245, 49 L.Ed.2d at 98. The *Wainwright* court stated at 295, 106 S.Ct. at 640, 88 L.Ed.2d at 632, that "[w]hat is impermissible is the evidentiary use of an individual's exercise of his constitutional rights after the State's assurance that the invocation of those rights will not be penalized."

In *State v. Rogers* (1987), 32 Ohio St.3d 70, 512 N.E.2d 581, the Supreme Court of Ohio, in reviewing a case wherein the defendant's exercise of his right to silence was commented upon without objection, discussed at length the *Wainwright* and *Doyle* decisions and stated the following:

"We note that federal courts, in applying the plain or harmless error analysis in cases where there had been *Doyle* violations, with near unanimity, have held such to be violative of due process and therefore prejudicial, requiring a reversal."

We find the fact scenario *sub judice* to be tantamount to a *Doyle* violation. The trial court specifically ordered that the state could only argue and present evidence up to appellant's remark invoking his right to remain silent. The state, after that admonition, elicited the remark again. The state then commented on appellant's invocation during closing argument and rebuttal. In its closing argument, the state asked the jury "[w]hat does your common sense tell you about these statements the Defendant is making?" The entire tenor of the state's closing argument focused on appellant's actions on the day of the incident as testified to by numerous witnesses and appellant's inability to recall the day's events as testified to by Bailey. There was no reason to comment upon appellant's invocation except to emphasize appellant's guilt and refusal to incriminate himself.

Upon review, we conclude it was plain error to permit testimony and argument on appellant's invocation of his right to remain silent.

Assignment of Error I is granted.

## VI

Appellant claims the trial court erred in using the anonymous juror system. We agree.

 The anonymous juror system as applied *sub judice* did not permit trial counsel to know the name and addresses of the venire. In fact, the jury verdict forms in the file have all the signatures blocked out. The verdict forms with the jurors' signatures were sealed and were not examined by trial counsel after the verdicts were read.

During voir dire, the trial court explained to the venire they were being referred to by number "for your anonymity, your privacy." The trial court explained "a year or so ago, the Court decided—the Judges decided that a number of jurors asked to remain anonymous." During the actual questioning of the jurors, the trial court and counsel used juror questionnaires.[1] No one was questioned as to their name or address. Jurors were asked their familiarity with the scene of the offense, the witnesses and the lawyers, and their employment. The trial court did not attempt to limit the questioning in any other matters except for the names and addresses of the jurors.

 Defense counsel did not object to this process or to the venire, and did not use all of his peremptory challenges. As a result of defense counsel's failure to object, we must review this issue under one of two standards. The state argues the plain error standard should prevail. See, Crim.R. 52(B). In order to prevail under a plain error analysis, appellant bears the burden of demonstrating the outcome of the trial clearly would have been different but for the error. *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804. As a result of defense counsel's failure to object and use all of his peremptory challenges, we find appellant cannot demonstrate plain error. Appellant argues the appropriate standard of review is under the doctrine of "structural error." In support, appellant cites the case of *State v. Esparza* (1996), 74 Ohio St.3d 660, 661, 660 N.E.2d 1194, 1196, wherein the Supreme Court of Ohio stated:

"In *Arizona v. Fulminante* (1991), 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302, the United States Supreme Court distinguished between two types of constitutional error: 'trial error' and 'structural error.' Trial error 'occur[s] during the presentation of the case to the jury, and * * * may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt.' 499 U.S. at 307–308, 111 S.Ct. at 1264, 113 L.Ed.2d at 330. Structural error affects 'the entire conduct of the trial from beginning to end' as well as 'the framework

---

1. These questionnaires were not made a part of the record.

within which the trial proceeds.' Such errors 'defy analysis by "harmless-error" standards.' *Id.* at 309–310, 111 S.Ct. at 1265, 113 L.Ed.2d at 331."

The question to be resolved is whether the *per se* rule of the trial court to use the anonymous jury system is a structural error. We answer the question in the affirmative for the following reasons.

In Ohio, the sanctity of the jury system has been staunchly defended as courts have held true to the Sixth Amendment to the United States Constitution and Sections 5 and 10, Article I of the Ohio Constitution. In 1853, Justice Ranney, writing for the Supreme Court of Ohio in *Work v. State of Ohio* (1853), 2 Ohio St. 296, 303, noted that:

"It thus appears that persons accused of crime have, for every moment of time since civil government existed within the territory of this state, by fundamental laws, been secured in the right of trial by jury. An institution that has so long stood trying tests of time and experience, that has so long been guarded with scrupulous care, and commanded the admiration of so many of the wise and good, justly demands our jealous scrutiny when innovations are attempted to be made upon it."

Because there are no Ohio cases to give us guidance on this issue, we must look to the federal courts. In writing for the Fifth Circuit Court of Appeals in *United States v. Krout* (C.A.5, 1995), 66 F.3d 1420, 1427, Judge Edith H. Jones stated that "the decision to empanel an anonymous jury * * * is a drastic measure, which should be undertaken only in limited and carefully delineated circumstances." Federal courts have sanctioned anonymous juries when ' "there is a strong reason to believe the jury needs protection" and the district court "tak[es] reasonable precautions to minimize any prejudicial effects on the defendant and to ensure that his fundamental rights are protected." ' *Id.* at 1427, quoting *United States v. Wong* (C.A.2, 1994), 40 F.3d 1347, 1376. The *Krout* court at 1427 set forth the following factors that may justify the use of an anonymous jury:

"Factors that may justify jury protection by anonymity include: (1) the defendants' involvement in organized crime; (2) the defendants' participation in a group with the capacity to harm jurors; (3) the defendants' past attempts to interfere with the judicial process or witnesses; (4) the potential that, if convicted, the defendants will suffer a lengthy incarceration and substantial monetary penalties; and, (5) extensive publicity that could enhance the possibility that jurors' names would become public and expose them to intimidation and harassment. *United States v. Paccione*, 949 F.2d at 1192; *United States v. Amuso*, 21 F.3d at 1264–65; *United States v. Ross*, 33 F.3d at 1520. Furthermore, as a caution that use of anonymous juries will remain a device of last resort, it is

necessary that the district court base its decision on more than mere allegations or inferences of potential risk."

These factors have been consistently applied in our federal court and others. See, *United States v. Sanchez* (C.A.5, 1996), 74 F.3d 562; *United States v. Talley* (C.A.6, 1999), 164 F.3d 989,.

In the case *sub judice,* no specific factors were considered in deciding to use the anonymous jury. The anonymous jury system is a rule of court used in all jury trials in the Court of Common Pleas for Fairfield County, Ohio.

The anonymous jury system is a significant alteration to the way jury trials have been conducted in this state. Although not contained in the record, one can theorize this carte blanche anonymous jury system is a result of the trial court's concern for accommodating jurors who may be hesitant or timid about jury service. Although the concern exhibited by the trial court is laudable in some respects, it nonetheless flies in the face of history, precedent, custom and the federal cases cited *supra.*

The empaneling of a jury is the first step in the commencement of the actual trial. It is from the venire that citizens of our state pick the jury of their peers. To deny citizens the right to know the names and addresses of their potential peers affects the entire trial from beginning to end and is indeed a structural error.

An argument can be made that if a trial court permits lenient questioning, as in this case, there is no reason to know a potential juror's name or address. We disagree with this argument in that there are many times when the neighborhood where a juror lives could significantly impact on the use of a peremptory challenge in selecting a peer *i.e.,* if a neighborhood is a high or low crime area. As the state pointed out during oral argument, there are many times the state is interested in names of potential jurors in determining the use of challenges and in testing the credibility to certain questions. As an example, the state might want to know if a juror is the relative of someone aggrieved by some prior prosecutorial action. The name of the juror might be very helpful in this respect. Also, many times faces are not familiar but names may ring a bell or sound an alarm that a juror should be questioned further.

We concur with the statement by Justice Ranney that any change to the jury system deserves "our jealous scrutiny." Absent any particularized need as delineated in the federal cases cited *supra,* and conscious of the right to trial by jury as the foundation of our civil and criminal justice system in Ohio, we find the trial court erred in using the anonymous jury system. This structural error necessitates a new trial.

Assignment of Error VI is granted.

## II, III, IV, V

Based upon our decision in Assignments of Error I and VI, we find these assignments to be moot.

The judgment of the Court of Common Pleas of Fairfield County, Ohio is hereby reversed and the cause is remanded.

*Judgment reversed
and cause remanded.*

GWIN, P.J. and HOFFMAN, J. concur.