OPINION
On September 25, 1997, the Fairfield County Grand Jury indicted appellant, Clifton Hill, on one count of aggravated murder with two firearm specifications in violation of R.C. 2903.01, one count of grand theft of a motor vehicle in violation of R.C. 2913.02, one count of fleeing and eluding in violation of R.C. 2921.331, and one count of having a weapon while under disability with a firearm specification in violation of R.C. 2923.13. Said charges arose from the shooting death of appellant's stepfather, Harry Sisco, on September 15, 1997.
A jury trial commenced on September 1, 1998. The jury found appellant guilty as charged except for the grand theft count where the jury found appellant guilty of the lesser included offense of unauthorized use of a motor vehicle in violation of R.C. 2913.03. By judgment entry filed September 24, 1998, the trial court sentenced appellant on the aggravated murder conviction to life imprisonment with parole eligibility after twenty years, plus eight years mandatory incarceration for the firearm specifications, to be served consecutively. The trial court also sentenced appellant to terms of seventeen months and eleven months to be served consecutively to the aggravated murder sentence.
Appellant filed an appeal and this court reversed and remanded the case for new trial based upon the anonymous jury issue (Assignment of Error VI). See, State v. Hill (2000), 136 Ohio App.3d 636. The state appealed and the Supreme Court of Ohio reversed and remanded the case to this court for complete review of all the assignments of error. See, State v.Hill (2001), 92 Ohio St.3d 191. This matter is now before this court for consideration. The original assignments of error are as follows:
I
 DEFENDANT'S DUE PROCESS RIGHTS WERE VIOLATED WHEN THE PROSECUTION SUBMITTED EVIDENCE OF THE DEFENDANT'S INVOCATION OF HIS RIGHT TO SILENCE AND EMPHASIZED THAT INVOCATION IN CLOSING ARGUMENT. THIS VIOLATED DEFENDANT'S RIGHTS AS GUARANTEED BY THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS UNDER THE UNITED STATES CONSTITUTION AND ARTICLE I, § 2, 10 AND 16 OF THE OHIO CONSTITUTION.
II
 THE TRIAL COURT ERRED IN ADMITTING CUMULATIVE, EXTENSIVE INADMISSIBLE HEARSAY EVIDENCE TO PROVE THE TRUTH OF THE MATTER ASSERTED IN VIOLATION OF THE EVIDENCE RULES. THE ADMISSION OF THESE STATEMENTS VIOLATED APPELLANT'S RIGHT TO CONFRONT WITNESSES AGAINST HIM AND VIOLATED BOTH THE UNITED STATES AND OHIO CONSTITUTIONS.
III
 APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, § 2, 10 AND 16 OF THE OHIO CONSTITUTION BY NUMEROUS ACTS AND OMISSIONS OF HIS TRIAL COUNSEL.
IV
 THE TRIAL COURT ERRED IN MODIFYING APPELLANT'S SENTENCE OUTSIDE OF HIS PRESENCE IN VIOLATION OF CRIM.R. 43 AND THE GUARANTEES OF BOTH THE FEDERAL AND STATE CONSTITUTIONS.
V
 THE TRIAL COURT ERRED IN INSTRUCTING THE JURY IN RESPONSE TO A QUESTION DURING DELIBERATIONS. THE COURT'S INSTRUCTION WAS INCORRECT AND DENIED APPELLANT A FAIR TRIAL. FURTHER, THE RECORD IS UNCLEAR AS TO WHAT EACH QUESTION WAS OR THE ANSWERS THAT WERE ULTIMATELY GIVEN AND THUS DENIES APPELLANT PROPER APPELLATE REVIEW.
VI
 THE TRIAL COURT ERRED WHEN IT EM PANELED AN ANONYMOUS JURY IN THE ABSENCE OF ANY EVIDENCE OR FINDINGS THAT AN ANONYMOUS JURY WAS NECESSARY IN THIS CASE, THEREBY COMMITTING STRUCTURAL ERROR IN VIOLATION OF APPELLANT'S DUE PROCESS RIGHTS UNDER THE UNITED STATES CONSTITUTION, INCLUDING HIS RIGHT TO THE PRESUMPTION OF INNOCENCE, AND HIS RIGHT TO A FAIR AND IMPARTIAL JURY.
As stated supra, this matter is before this court on a specific remand from the Supreme Court of Ohio. The remand is limited to Assignments of Error I, II, III, IV and V. Assignment of Error VI was disposed of by the court. The remand instructed this court to conduct the following review:
 It is urged that this court should remand the cause to the court of appeals for further consideration in the event that this court reverses the judgment of the court of appeals on the issues that court found dispositive. We agree that remand is appropriate and necessary for a complete analysis under the plain-error doctrine. Therefore, we remand this cause to the court of appeals to consider the unaddressed assignments of error and to proceed as warranted to an assessment of plain error, in light of the resolution of those assignments of error that are pertinent to that inquiry.
 For the foregoing reasons, we hold that when a court of appeals engages in a plain-error analysis, it must conduct a complete review of all relevant assignments of error in order to determine whether a manifest miscarriage of justice has occurred that clearly affected the outcome of the trial.
 Hill, 92 Ohio St.3d at 204.
In Justice Cook's concurring opinion, she enjoins this court to engage in a plain error analysis consistent with United States v. Olano (1993),507 U.S. 725. Justice Cook discussed Olano and the limitations of the plain error rule in her dissent in State v. McKee (2001),91 Ohio St.3d 292, 299, as follows:
 In United States v. Olano (1993), 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508, the United States Supreme Court clarified the standard for plain-error review under Fed.R.Crim.P. 52(b). The court explained that three limitations circumscribe an appellate court's decision whether to correct an error absent a timely objection by the defendant at trial. First and most fundamentally, there must be error, i.e., a deviation from a legal rule. Id. at 732-733, 113 S.Ct. at 1777, 123 L.Ed.2d at 518. Second, the error must be plain. To be plain, the error must be "clear" or, equivalently, "obvious." Id. at 734, 113 S.Ct. at 1777, 123 L.Ed.2d at 519, citing Young, 470 U.S. at 17, 105 S.Ct. at 1047, 84 L.Ed.2d at 13, fn. 14. Third, the error must affect substantial rights. In most cases, this means that the error must have affected the outcome of the trial. Olano, 507 U.S. at 734, 113 S.Ct. at 1777-1778, 123 L.Ed.2d at 519-520.
Under this guidance, we shall proceed to discuss the assignments of error that require a plain error analysis. Because this court in the previous Hill decision found a violation of Doyle [v. Ohio (1976),426 U.S. 610] was a violation of a substantive right per se, this court did not conduct a formal review of the record given the reversal on the anonymous jury issue. As is pointed out by the Supreme Court of Ohio, this was error on the part of this court. We will now engage in a plain error analysis with a complete review of the record.
 I
Appellant claims it was "plain error" to permit the state to comment on his statement invoking his right to remain silent.
Appellant's statements were placed into evidence by Detective David Bailey of the Lancaster Police Department who testified as follows to his "pre-interview" (interview prior to tape recorded statement) with appellant and what appellant said:
 And during that pre-interview, when you confronted him [appellant] about the homicide, the murder of Harry Sisco, what, if anything, did he say?
 I told him that Harry Sisco was the victim of a shooting homicide and he told me that's the first time that he heard it, that that had taken place. I then confronted him with some of the meager information that I had at that point about him being seen in the area, also about the argument prior to the homicide. And his exact words to me at that point were, `You do what the fuck you have to. I'm not saying anything.'
T. at 1676-1677.
Following a voir dire proceeding about appellant's tape recorded statement which the trial court suppressed, Detective Bailey resumed the stand and testified to the following:
 Near the end of the early interview of the non-taped interview, I explained to him that Harry Sisco had died of a homicidal shooting and I told him that witnesses had placed him at the scene and that witnesses had discussed a serious argument or disagreement. And then I asked him if he was involved in it, and that's when the response occurred that I mentioned yesterday, sir.
And do you recall what that response was?
 That response was, `Do you what the fuck you have to do. I'm not saying anything.'
And what was his demeanor at that point?
 It had changed from sort of anxious and nervous to hostile.
T. at 1793.
During closing argument, the state argued appellant's invocation of his right to remain silent as follows:
 And David Bailey told you, when he started asking him questions about what had happened to Harry Sisco, the tenor of the conversation changed. The Defendant became hostile, is the way he described it. It changed. And I believe it was something to the effect of, `You do whatever the fuck you have to do. I'm not saying anything.'
T. at 1871.
At the conclusion of the closing arguments, defense counsel told the trial court "I thought that we were dangerously close to commenting on the Defendant's failure to take the stand in closing argument." T. at 1905. The trial court informed the parties it would give an "instruction on the fact that he does not have to testify." T. at 1906. During the instructions to the jury, the trial court stated the following:
 Defendant does not testify: It is not necessary that the Defendant take the witness stand in his own defense. He has a constitutional right not to testify. The fact that the Defendant did not testify must not be considered for any purpose.
T. at 1940.
We note this instruction did not specifically address the invocation of the right to remain silent during a Miranda interrogation. In our previous opinion, we found the prosecutor's comment during closing argument to be in error and a violation of appellant's right to remain silent. Hill, 136 Ohio App.3d at 641; Doyle.
We have reviewed the record in light of the directives of the Supreme Court of Ohio to find if prejudice occurred to appellant as a result of the error and if that prejudice created a manifest injustice. We conclude in the negative for the following reasons.
As appellant points out, this is a case consisting of mainly circumstantial evidence. However, the various parts of the puzzle easily fit together despite the nature of the evidence. It is undisputed that decedent, Harry Sisco, had a serious argument with appellant.[1]
Patricia Dingess and decedent's son, David Sisco, testified to overhearing an argument between decedent and appellant. T. at 331-334, 356-358. David Sisco witnessed appellant in a very agitated state, picking up a sheet of metal and slamming it against a table. T. at 361. Appellant left the premises and proceeded to a bar, Hillbilly Heaven, where he consumed alcohol and was overheard saying "like to kill them" and "taking them out." T. at 363, 398, 540-541. Appellant was also overheard yelling into a telephone `I'm going down there and shoot Dick and Harry.' T. at 489. Appellant borrowed his girlfriend's car, a black Ford Probe, and borrowed a gun, a .243 Remington with a scope, from Terry Chandler. T. 366-367, 566, 569, 782-785.[2] David Sisco observed the gun in the front passenger seat of the Ford Probe prior to the shooting. T. at 374.
There are no eyewitnesses to the actual shooting, save decedent and the shooter. Neighbors observed the scene immediately prior to and right after the shooting. Betty Lehman, a next door neighbor, testified she observed decedent sitting on his porch. T. at 262. Ms. Lehman observed appellant come to the residence in a little black car, similar to a Ford Probe. T. at 268-269, 286; State's Exhibit 11. Ms. Lehman saw decedent stand up, and then she went to her backyard to her garage. T. at 269-270. As she was backing her vehicle out of the garage, Ms. Lehman heard a blast. T. at 270. Ms. Lehman pulled around the victim's garage, went onto the main street, stopped at a red light, pulled into a parking lot and exited her vehicle whereupon she observed decedent face down in a shrub. T. at 270-273. Carol Six and Paul Berry testified they were across the street and observed a black vehicle parked at the curb in front of decedent's residence. T. at 710, 731. Mr. Berry identified the vehicle as a Ford Probe. T. at 731. The driver of the vehicle moved across the seat to the passenger side as if reaching to get something. T. at 711, 732. Both witnesses heard a gunshot like noise and observed the driver of the black vehicle move back to the driver's side and drive away. T. at 711-713, 733, 735. Alex Bosserman testified he was walking on the street when he heard a "firecracker" noise and observed decedent fall off the porch into some bushes. T. at 750-751. The only other person on the premises at the time of the shooting was decedent's cousin who was asleep in the basement. T. at 641.
After the shooting, appellant was seen driving away from the area by David Sisco. T. at 383. Mr. Chandler, who had been searching for appellant, found appellant and retrieved his gun, including shells which he had observed on the seat of the vehicle. T. at 805. Appellant drove away and went to the Sportsman's Club. T. at 929, 1067. The bartender, Warren Brunney, testified appellant went behind the bar and washed his hands which was unusual. T. at 931. Thereafter, appellant stole a motorcycle owned by David Schrider. T. at 935-936, 1068-1070. After a police chase on the motorcycle, appellant arrived at the residence of Christopher Henry and asked him to hide the motorcycle and give him a clean T-shirt. T. at 1084-1087, 1089-1090, 1104-1107.
The physical evidence at the scene was consistent with decedent being on the porch at the time of the shooting and falling into the bushes. T. at 1007-1009. Blood splatters were on the west side of the residence and inside the awning above the porch and a bullet mark was on the west side of the residence. T. at 1237-1238, 1242-1244; State's Exhibts 41, 42, 44, 45. The coroner testified decedent was not shot at close range i.e.,
under four feet. T. at 1217. The investigating officers found two .243 caliber rounds of ammunition in the vehicle appellant had borrowed from his girlfriend. T. at 1313-1315; State's Exhibits 19-A and 19-B. This ammunition was consistent with the ammunition used in the gun appellant had borrowed from Mr. Chandler. T. at 1464-1471. While weapons were found in the basement of decedent's residence, these weapons were handguns. T. at 647. Also, a .20 gauge shotgun was found in the residence, but it had not been fired. T. at 1650-1654.
Even though admission of the evidence of appellant's refusal to "say anything" and the prosecutor's comment thereon would have been in error had an objection been raised, given the totality of the evidence, we cannot say the jury's verdict was so tainted by it so as to create a miscarriage of justice.
Assignment of Error I is denied.
 II
Appellant claims numerous hearsay statements were permitted at trial and such errors violated his right to a fair trial. We note no objections were made to the statements therefore, any error would have to be plain error. For the following reasons, we find no error in the admission of the statements cited by appellant.
The type of statements complained of can be divided into two categories. The first category is statements made by the decedent to others. These "others" testified at trial. The basic thrust of the statements alluded to the fact that if anything happened to decedent, appellant would be the person responsible:
[Testimony of Harry Paul Sisco]
 Did your father say if anyone had threatened him that day?
 He told me before I left, quote/unquote, my dad told me that if anything happened to him, `Don't let Clifton Hill get away with it, because he's the one that did it.' That's what he told me word for word.
T. at 453.
[Testimony of Richard England]
 Did Harry [decedent] mention specifically his fears to you?
Specifically, in a round-about way, yes.
How did he do that?
He had a fear that Clifton was going to kill him.
What did he say to you that made you think that?
 He told me specifically, if anything happens to him, do not Clifton get away with it. It was murder.
T. at 517.
[Testimony of Debbie Lefebure]
Well how did he [decedent] sound?
Out of breath, upset.
Was he talking loudly or softly?
 Like he was out of breath. It was more like (breathing sounds) `That fuck'n boy is going to kill me. He threatened to beat my head in.'
T. at 687.
This testimony was reiterated by the prosecutor on closing argument:
 He [decedent] informs Richard of the argument. And then as he's leaving, he says some words that are almost chilling, really, as if he knew what was going to happen that day. `If anything happens to me, don't let him get away with it, because it was murder.' And Harry Sisco said that to more than just one person that day. He knew that that was not just another family spat.
T. at 1840.
 And Richard England's testimony comes to mind. When Harry Sisco left his shop that night, `If anything happens to me, it was murder, and don't you let him get away with it.'
T. at 1884.
Under Evid.R. 804(A)(4), these statements by the decedent qualify as an exception to the hearsay rule as the declarant was "unavailable":
 `Unavailability as a witness' includes any of the following situations in which the declarant:
 is unable to be present or to testify at the hearing because of death or then-existing physical or mental illness or infirmity;
However, these statements fail to pass the requirements of Evid.R. 804(B).
We have examined the tenor and environment when all of these statements were made. The witnesses described decedent as being "out of breath," "upset," "weird," "trying to calm him down," "never seen him in this state," "[h]e was very pale * * * scared * * * shaking * * * never seen Harry scared." T. at 448, 512, 515, 687. Although all of these observations were over a period of time, they were contemporaneous to some overt act of appellant i.e., a family dispute or fight, therefore, we find these statements qualify under Evid.R. 803(2) which states as follows:
 The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
 (2) Excited utterance
 A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.
As this court held in State v. Rocker (August 20, 1996), Guernsey App. No. 94CA28, unreported, at 10-11:
 In determining whether an utterance qualifies as an `excited utterance' under Evid.R. 803(2) the trial court is to consider the following factors:
 (1) the lapse of time between the event and the declaration; (2) the mental and physical condition of the declarant; (3) the nature of the statement; and (4) the influence of intervening circumstances.
 Miles v. General Tire Rubber Co. (1983), 10 Ohio App.3d 186, 190.
The controlling factor in determining whether a statement is an excited utterance is whether the statement was made under such circumstances as would reasonably show that it resulted from impulse rather than reason and reflection. State v. Smith (1986), 34 Ohio App.3d 180, 190. The trial court had broad discretion in making this factual determination. Id. Based upon the foregoing, we do not find error in the admission of the complained of statements.
The second category of statements are those statements made by a third party about what happened that day. Mr. Chandler testified to a telephone conversation he had with appellant's mother, Lois Hill. Mr. Chandler stated "[s]he said that she thought that Cliff might have shot Harry." T. at 809. Upon review, we find Mr. Chandler was explaining how he had heard about decedent being shot and why he had thought appellant was involved. The complained of testimony was given immediately following this testimony:
 Well, I didn't know what to think. At that point, I was scared, because I didn't — I was just going on what David had told me and I just thought, no, oh, no.
 At that point, did you think that the Defendant might have shot Harry Sisco?
I didn't think he would. I didn't know.
 When did you first hear that Harry Sisco had been murdered?
 The phone rang and I have an answering machine. I waited until the answering machine kicked on. It was Lois.
Lois Hill?
Yes.
Did you answer the phone then?
Yeah, I picked the phone up.
Did she tell you that Harry had been killed?
 She didn't say that. She asked me if Cliff had got anything when he was at my house, and I just went, `Uh-huh.'
By uh-huh, did you mean yes?
Yes.
 When you gave that response, was anything else said?
 She asked me if I'd got it back. I just said, `Uh-huh.'
Again, by the response of uh-huh, did you mean yes?
Yes.
T. at 808-809.
This testimony was reiterated by the prosecutor during closing argument. T. at 1860.
Ms. Lehman's taped conversation with a 911 operator was played for the jury. T. at 289; State's Exhibit 8. Within that conversation, Ms. Lehman made the following statement:
 I saw him [appellant]. He just drove through the intersection and I went down to the garage. I said, `Good-by, Harry.' I said, `I'll see you because I've got to go.' I didn't want to get in the middle of it, so I left. As I was pulling out of the garage — well, it's a good thing I did leave, because he would have probably would have killed me too.
T. at 295.
This statement was gratuitously given and was not responsive to the question posed by the operator. However, we find the above statement did not affect appellant's substantial rights and therefore does not constitute plain error, even though it did not qualify under any rule of evidence.
During his testimony, Mr. Henry explained why he called the police:
 Yes. I had — it'd been about an hour since Cliff had left. I got a phone call from my wife's sister that said that she had heard that Cliff had shot Harry Sisco. And so at that point, I thought it best that I call and let them know where the bike was left. You know, I was helping a guy out from a speeding ticket and now it's something much different. So I went ahead and called them and told them what I had known at that time and told them that the bike was underneath the deck.
T. at 1097. Although this testimony contains a hearsay type statement, it was not offered for the truth of the matter asserted but to explain the call to the police department.
Based upon our review, we find no error in the admission of these statements.
Assignment of Error II is denied.
 III
Appellant claims his trial counsel was ineffective and denied his right to a fair trial.
The standard this issue must be measured against is set out State v.Bradley (1989), 42 Ohio St.3d 136, paragraphs two and three of the syllabus, certiorari denied (1990), 497 U.S. 1011. Appellant must establish the following:
 Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. (State v. Lytle [1976], 48 Ohio St.2d 391, 2 O.O.3d 495, 358 N.E.2d 623; Strickland v. Washington [1984], 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, followed.)
 To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different.
Appellant argues a litany of errors many of which are addressed in separate assignments of error:
 Failure to object to the prosecutor's repeated violations of Appellant's Doyle rights (See Assignment of Error No. 1);
 Failure to object to the cumulative, extensive inadmissible hearsay evidence that was presented to the jury (see Assignment of Error No. 2);
 Failure to object to the improper and illegal original sentence and failure to object to the corrected sentencing entry (see Assignment of Error No. 4);
 Failure to object to the improper answer given by the Court in response to a jury question during deliberations and failure to place questions and answers on the record (see Assignment of Error No. 5);
 Failure to object to the use of an anonymous jury (see Assignment of Error No. 6);
 Failure to try the Weapon Under Disability charge to the court as opposed to the jury;
 Failure to present any defense, subpoena any witnesses or, in fact, file a single document or pleading on behalf of the defendant;
 Failure to move for a Directed Verdict of Acquittal pursuant to Crim.R. 29 motion;
 Failure to voir dire jury members following reports of misconduct;
 Failure to move to properly limit the testimony of the police officer in respect to areas in which he was not competent to testify (gun residue, better shot when drunk);
 Failure to properly represent his client by requesting a `noble and honest conviction';
 Failure to file a motion to suppress prior to trial; and,
 Failure to object to the prosecutor's misconduct during trial and in closing arguments.
Appellant's Brief at 26.
In Assignment of Error II, we reviewed issue B under a plain error analysis and found it did not prejudice the outcome of the trial a laStrickland. In Assignment of Error IV, we find issue C to be plain error therefore, we need not discuss it under Strickland. In Assignment of Error V, we review issue D and find no error therefore, there can be no deficiency by trial counsel. Issue A will be addressed in conjunction with M.
 E
In determining the issue of the anonymous jury system, the Supreme Court of Ohio found no plain error after stating the following:
 Appellee's failure to express any disagreement whatsoever at trial to the use of an anonymous jury is the key factor that distinguishes this case from the federal cases on juror anonymity cited by appellee. In many of those cases, juror anonymity was contested at trial, and the trial courts decided to use anonymous juries after being made aware of the defendants' protestations that fundamental rights were being compromised.
 Due to appellee's failure to raise the anonymity issue at trial, we decline to consider the propriety of the anonymous-jury local rule, even though we recognize that the rule implicates important concerns that would clearly be worthy of review by this court if the issue had been properly presented.
 Hill, 92 Ohio St.3d at 198.
Reading between the lines of the above cited dicta, it would appear there was error on the part of defense counsel and the trial representation was deficient in this regard. However, as in any plain error analysis, the next step is to determine if the error unfairly prejudiced appellant and whether it deprived appellant of the right to a fair trial. Clearly, the failure to object made the issue unavailable for Supreme Court review as stated in the Hill opinion. Nevertheless, it appears from Justice Resnick's opinion that the use of the anonymous jury system does not infringe on a fundamental right:
 Nevertheless, assuming that a structural-error analysis may possibly apply in an egregious plain-error situation, we find that in the circumstances of this case, the seating of an anonymous jury was not structural error. The use of an anonymous jury does not necessarily involve the violation of a fundamental right. There is no unqualified constitutional right to know the identity of jurors. In the instant case, the seating of an anonymous jury did not necessarily render the trial so fundamentally unfair that it could not be a reliable vehicle for the determination of appellee's guilt or innocence. See Rose, 478 U.S. at 577-578, 106 S.Ct. at 3106, 92 L.Ed.2d at 470. We find that this case does not present an example of a violation of a fundamental constitutional right that would lead to the basic unfairness that was present in cases such as Gideon, Tumey, Vasquez, McKaskle, Waller, or Sullivan. We do not believe that the anonymous jury rule impinges on fundamental rights in the same way as the deprivation of counsel in Gideon, or the biased trial judge in Tumey, or the racial discrimination in Vasquez. Accordingly, to the extent that the court of appeals held that structural error warrants the reversal of appellee's convictions, we reverse that judgment.
 Hill, 92 Ohio St.3d at 199-200.
Further, this court and the Supreme Court of Ohio found no plain error in the use of the anonymous jury system. Therefore, although we are troubled by the use of the anonymous jury system, based upon the precedent of the Supreme Court of Ohio in Hill, supra, we find it did not rise to the level of ineffective assistance of trial counsel.
 F
Appellant argues his trial counsel should have tried the weapons under disability charge to the trial court to remove from the jury the fact that he had a previous conviction.This court must accord deference to defense counsel's strategic choices made during trial and "requires us to eliminate the distorting effect of hindsight." State v. Post (1987),32 Ohio St.3d 380, 388.
We note the trial court read to the jury during the jury charge the joint stipulation of appellant's prior conviction. T. at 1912. The trial court charged the jury separately on each count of the indictment. Although it would have been preferable for the jury not to know of appellant's previous conviction, we cannot find it unduly prejudiced appellant or denied him a fair trial.
 G
Appellant argues his trial counsel failed to present or subpoena witnesses or file any motions. In reviewing the record, we do not find any undue prejudice or error. Again, we must accord deference to defense counsel's strategic choices. Post.
 H
Appellant argues his trial counsel failed to file a Crim.R. 29 motion for acquittal. The standard to be employed by a trial court in determining a Crim.R. 29 motion is set out in State v. Bridgeman (1978),55 Ohio St.2d 261, syllabus:
 Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt.
All of the testimony was presented by the state as appellant put on no defense. From our review of the evidence under the standard cited above, we find sufficient credible evidence, albeit circumstantial, to permit the case to go to the jury.
 I
Appellant claims his trial counsel was deficient in failing to voir dire certain members of the jury for misconduct. Appellant cites to two incidents where jurors volunteered that they had some contact with a person who knew decedent. T. at 391, 1833-1834. Apparently, both jurors opined it would not affect their ability to be fair. The record appears to indicate both counsel conducted some questioning however, this questioning was not preserved. Counsel and the trial court were satisfied with the procedure. Absent anything on the record, we will presume regularity. Knapp v. Edwards Laboratories (1980), 61 Ohio St.2d 197. In addition, there is no showing of prejudice to appellant or any violation of a substantive right.
 J
Appellant argues his counsel failed to object to testimony on gun residue and the ability to shoot when intoxicated. Deputy Chief Randy Lutz testified to his experience with "gunshot residue" as follows:
 Basically through my experience at the Police Department. I did spend some time as an investigator in the Detective Bureau. I had the opportunity of attending some homicide training and got — had some training, a little bit of training in gunshot residue and that sort of thing, plus just practical experience, on-the-job experience that I've picked up over the years.
T. at 1612.
As a result of his training and experience, Deputy Chief Lutz opined that very little residue would flash back to the hand, neck and face of the shooter, and any residue would come from the muzzle end. T. at 1613-1614. The value of this testimony was to refute the lack of gun powder residue on appellant. It was not a presentation of evidence on guilt, but a presentation on the reason for the lack of evidence. It was obvious Deputy Chief Lutz had direct experience with the type of weapon in the case sub judice and was testifying on observed facts. Therefore, we do not find the testimony was inadmissible or the cross-examination by defense counsel was deficient.
 K
Appellant argues his trial counsel during voir dire misspoke during voir dire in asking for a "noble and honest conviction":
 MR. ROGERS: You felt that the laws should be equal to everyone.
JUROR NO. 6: That's correct.
 MR. ROGERS: Which is what we're looking for here, a noble and honest conviction. Does that mean you also feel that someone who's charged with a crime should be treated equally to everyone else?
 JUROR NO. 6: Sure, until they're convicted of that crime.
T. at 123.
When the dialogue is reviewed in its context, we fail to find that defense counsel was advocating appellant's conviction.
 L
Appellant argues his trial counsel failed to file a motion to suppress his statement. As we noted in Assignment of Error I and our previous decision, the trial court conducted a mini-suppression hearing during trial and did not allow appellant's statement to be presented. T. at 1692-1709, 1780; Hill, 136 Ohio App.3d at 639-640.
 A, M
Appellant claims his trial counsel was deficient in failing to object to a prosecutorial comment. Appellant argues the comment constituted aDoyle violation. See, Assignment of Error I. We note if defense counsel would have objected, the standard of review would have been harmless error. Harmless error is described as "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." Crim.R. 52(A). This review is more restrictive than plain error as discussed in Assignment of Error I and calls for an analysis. Where plain error requires an inquiry into manifest injustice, harmless error requires a showing of undue prejudice or a violation of a substantial right. Under Doyle, the comment on appellant's silence was a violation of due process and by failing to object, defense counsel was ineffective. Said ineffectiveness violated appellant's right to due process. Gravley v. Mills (1996), 87 F.3d 779.
Assignment of Error III is granted as to the failure to object to the prosecutor's Doyle comment, and denied as to the other claims.
 IV
Appellant claims the trial court erred in modifying his sentence when he was not present. We agree.
Under Crim.R. 43, appellant has the right to be present at sentencing as well as all proceedings. At the conclusion of the sentencing hearing, the trial court sentenced appellant to the following in pertinent part:
 As to the first specification to count one, the possession of a firearm, as was used to facilitate the offense of aggravated murder, the Court's ordering that the Defendant serve a period of three years, which is a mandatory term of three years. It will be served prior to the sentence itself.
 As to the second specification to count one, which the jury found that the discharging of the firearm from a motor vehicle caused the death of Harry Sisco, which carries a sentence of five years mandatory, the Court, because of its consideration of these two specifications in the same count for aggravated murder, would find that the first and second counts merge or are to be served concurrently, so that the three years will be served concurrently with the five years. But they will be served consecutive to the 20 years — the 20-year sentence or the life sentence, with 20 years eligibility served — 20 years served first before eligibility for parole is considered.
* * *
 There was a specification to count four and the Court is ordering that the Defendant serve a period of three years mandatory sentence. And that is to be served consecutive to the sentence imposed for count four, and also to count one with its specifications and to count three.
September 17, 1998 T. at 30-32.
By judgment entry filed September 24, 1998, the trial court modified the sentence as follows:
 Upon agreement of the parties and in the interest of justice, the Court now amends its sentencing of the above Defendant stated on the record on September 17, 1998, and imposes the specifications in the first count consecutively to one another, and dismisses the specification in count four of the indictment.
The state argues the altered sentence did not result in an increased sentence and therefore it was harmless error. We disagree and grant the assignment of error and order the trial court to resentence appellant.[3]
 V
Appellant claims the trial court erred in its instructions to the jury as a result of a jury question during deliberations. We disagree.
The jury question was as follows:
 The Court: The jury has a question for the Court. Let the record reflect that Mr. Rogers is present and Andrea Woods, Prosecutor is present.
 The question is this: To clarify last evening's question, count one, element one, Defendant, Clifton Hill, does a positive answer indicate yes, he is the shooter or yes, he is the Defendant suspected as shooter in this case?
 And the Court's answered the first by circling the answer, "Yes, he is the shooter," or also, "Yes, he is the defendant charged as shooter in this case."
 And I went on to define it hopefully clearer by saying: The Defendant, Clifton Hill, is charged in the indictment as the person who committed the crimes charged. It is for you to decide whether he is the person, the shooter.
T. at 1978-1979.
We have reviewed the record and cannot find "last evening's question" nor the note referred to by the trial court. All present during the discussion with the trial court appear to understand the "last evening's question." We will presume the regularity of the proceeding. Knapp,supra. We also find the trial court's additional explanation was a proper statement of the law.
Assignment of Error V is denied.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Fairfield County, Ohio is reversed and remanded to said court for new trial.
Hon. W. Scott Gwin, P.J. Hon. Sheila G. Farmer, J. concur. Hon. William B. Hoffman, J. concurs in part; dissents in part.
[1] Appellant was not related to decedent, but his mother, Lois Hill, had been married to him at one time.
[2] Decedent's condition was consistent with being shot with a bullet from a high velocity weapon i.e., rifle or shotgun. T. at 1219-1220.
[3] Our decision in Assignment of Error III makes this issue moot, but under the Supreme Court of Ohio's directives in Hill, we have reviewed the assignment.