JOURNAL ENTRY and OPINION
Joseph Bradley appeals from a judgment of the common pleas court entered pursuant to a jury verdict finding him guilty of aggravated burglary, kidnaping, aggravated robbery, and vandalism. On appeal, Bradley claims that the court improperly admitted the eyewitness identification evidence, improperly polled jurors, used an anonymous jury, and improperly seated an alternate juror. He also maintains his conviction is not supported by sufficient evidence and is against the manifest weight of the evidence. He additionally complains that he received ineffective assistance of counsel. After a thorough review of the record, we have concluded the trial court properly conducted the trial, that the verdict is supported by sufficient evidence and is not against the manifest weight of the evidence, and that Bradley failed to demonstrate ineffective assistance of counsel. We therefore affirm the judgment of the court.
The record reveals that on January 25, 2000, at 2:00 p.m., Greg Braxton, while working on the computer at his house at 11201 Dove Avenue, Cleveland, heard a knock at the door. Upon hearing postal delivery, he opened his side door and saw a male and a female dressed in postal uniforms. The male immediately stuck a gun in his stomach, forcing Bradley back into the house, and directed him at gunpoint to go to the basement and to lie face down on the basement floor. According to Braxton, a second male had entered the house and, together with the gunman, handcuffed his hands behind his back. The male in the uniform then brought Braxton back to the first floor and told him to lie down on the living room floor. The intruders repeatedly demanded to know where the money and the drugs are as they ransacked the house. An unidentified man also struck Braxton in the head several times with a gun, causing him to bleed. The intruders removed a television and two video cameras from the house, and, before they left, ripped the phone cord off the kitchen wall and used it to tie Braxton's legs. Braxton managed to wiggle out of the phone cord, went outside, and signaled a neighbor for help. From the neighbor's house they called the police. While being transported to the hospital in an ambulance, Braxton described the uniformed male assailant as black, slightly taller and bigger than himself, with a complexion similar to his, and wearing a goatee.
Subsequently, in April of 2000, U.S. Postal Inspector Jean Swinson began to investigate the January 25, 2000 incident together with two similar incidents that had occurred. As part of her investigation, she compiled a photo array consisting of photographs of nine individuals whom she had learned could be potential suspects. On May 4, 2000, Braxton went to the police station, and, from that photo array, identified Bradley as the male in the postal uniform who forced entry into his house. Afterwards, Braxton gave a statement to the police, again describing Bradley's facial hair as a goatee.
Thereafter, a grand jury indicted Bradley for aggravated burglary, kidnapping, vandalism, and aggravated robbery, with firearm specifications, and for disrupting public service.
Bradley filed a motion to suppress the photo identification evidence, challenging the photo array as impermissibly suggestive.
At the suppression hearing held immediately prior to trial, Braxton testified about his identification of Bradley from the photo array, and he also positively identified Bradley in court. Next, Swinson testified about compiling the photo array and answered affirmatively when asked if Braxton had made an immediate identification of Bradley from the photo array.
At trial, Braxton testified that he had identified Bradley in the photo array, and he again made an in-court identification. Next, the state called Jean Swinson, who described for the jury how she became involved in the case as a result of a similar incident which occurred in April 2000 and how she compiled the photo array working with police officers in the Fourth and Fifth Districts of Cleveland and other officers in the City of East Cleveland. She further testified that upon viewing the photo array, Braxton picked Bradley almost immediately. On re-cross, defense counsel tried, but the court would not allow Swinson to answer whether Bradley had a full beard at the time of his arrest in May 2000.
Having filed a notice of alibi prior to trial, Bradley produced a plumber who worked on his father's house the day of the incident and who corroborated that Bradley had been at his father's new house that day; he also testified that Bradley wore a full beard at that time. Bradley's father also testified that Bradley had guarded his new home while under construction.
Following trial, the jury found Bradley not guilty of disrupting public service but guilty of all remaining counts and the firearm specifications; the court then imposed concurrent sentences of six years on the aggravated burglary, kidnapping and aggravated robbery charges, concurrent with eleven months for vandalism, but consecutive with a three-year term for the firearm specification.
Bradley now appeals, raising ten assignments of error for our review. The first states:
 THE TRIAL COURT ERRED IN PERMITTING EYEWITNESS IDENTIFICATION AT TRIAL FOLLOWING A PRE-TRIAL IDENTIFICATION BY PHOTOGRAPH WHICH PROCEDURE WAS IMPERMISSIBLY SUGGESTIVE SO AS TO GIVE RISE TO A VERY SUBSTANTIAL LIKELIHOOD OF IRREPARABLE MISIDENTIFICATION.
Bradley challenges the photo array as impermissibly suggestive and questions the reliability of Braxton's identification. In addition, he argues that because of the substantial likelihood of irreparable misidentification in the photo array, the court should not have permitted Braxton to make an in-court identification.
We initially note that in a hearing on a motion to suppress evidence, a trial court serves as the trier of fact and is the primary judge of the credibility of witnesses and the weight of the evidence. See State v. Mills (1992), 62 Ohio St.3d 357, 582 N.E.2d 972. Accordingly, we must defer to the trial court's findings of fact and conclusions of law if competent and credible evidence exists to support the trial court's findings. See State v. Smith (1997), 80 Ohio St.3d 89, 684 N.E.2d 668.
Convictions based on eyewitness identification at trial, following a pre-trial identification by photograph, will be set aside only if the photographic identification procedure is so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. State v. Perryman (1976), 49 Ohio St.2d 14,358 N.E.2d 1040, paragraph two of the syllabus.
Furthermore, the court in State v. Halley (1994), 93 Ohio App.3d 71,76, 637 N.E.2d 937, 940, summarized the proper analysis adopted by the courts in this regard:
 The threshold question is whether the photo identification is impermissibly suggestive. All identification processes are inherently suggestive. Due process is violated only when the process is so impermissibly suggestive that the identification is unreliable in that there exists a substantial likelihood of irreparable misidentification.
Under this two-pronged analysis, the first question is whether the identification procedure had been unnecessarily suggestive; if so, we apply the second prong of the inquiry to determine the reliability of the identification, i.e, whether under all the circumstances, the suggestive procedure created a very substantial likelihood of irreparable misidentification. See State v. Waddy (1992), 63 Ohio St.3d 424,588 N.E.2d 819. For the latter inquiry, the court in Manson v. Brathwaite (1977), 432 U.S. 98, provided the following factors for evaluating the reliability of a witness's identification:
 * * * [R]eliability is the linchpin in determining the admissibility of identification testimony * * *. The factors to be considered * * * include the opportunity of the witness to view the criminal at the time of the crime, the witness's degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself.
See, also, State v. Jells (1990), 53 Ohio St.3d 22, 27, 559 N.E.2d 464.
Here, regarding the initial question of whether the photo array had been unnecessarily suggestive, our examination of the photo array does not support Bradley's contention that his photo is the clearest and most prominent among the photographs shown to the eyewitness or that his picture alone clearly portrays a goatee. Our review does not reveal any irregularity in displaying the array, and we note it contains individuals showing different patterns of facial hair: notably, two other photographs depict black males wearing goatees. Since Bradley failed to demonstrate the suggestiveness of the identification procedure, we do not reach the remaining part of the due process inquiry.
However, even if we were required to conduct such an inquiry, applying the reliability test, we note that during the incident, Braxton had several opportunities to view the defendant: he testified that he looked at the uniformed perpetrator who forced him into the house at gunpoint; he observed the gunman when he was taken to the basement, then again, while in the basement with this perpetrator, and also when the perpetrator took him upstairs. Nothing in his testimony suggests a lack of attentiveness during the incident. Regarding Braxton's allegedly inaccurate description of Bradley, in which he described the perpetrator as a black male with a goatee, a bit taller and bigger than himself, the record before us contains photographs of Bradley showing him with facial hair and reflecting his height as 6'1 and his weight as 245 pounds, compared to Braxton at 5'11 and 220 pounds. Thus, Braxton's prior description, made immediately after the incident, matches Bradley's physical attributes. Regarding the level of certainty, the record indicates that Braxton testified at the suppression hearing that he was pretty sure about his identification, and Jean Swinson testified that, after viewing the array, Braxton made an immediate identification. Thus, although three months had passed between the crime and the time of identification, on balance, we find no very substantial likelihood of misidentification calling for suppression.
Because Bradley failed to demonstrate either the unnecessary suggestiveness of the identification process or the unreliability of the identification, we have concluded that the trial court did not err by admitting the photo identification or the in-court identification by Braxton. Accordingly, we reject this assignment of error.
Bradley's second assignment of error states:
 THE TRIAL COURT ERRED IN FAILING TO GIVE THE DEFENDANT A TIMELY HEARING ON HIS MOTION FOR VOIR DIRE OF IDENTIFICATION WITNESS AND FOR ORDER DISCLOSING OTHER EVIDENCE USED IN THE IDENTIFICATION PROCEDURE.
Bradley contends that although he filed a Motion for Voir Dire of Identification Witnesses and for an Order Disclosing Other Evidence Used in the Identification Procedure on October 10, 2000, the court did not hold a hearing on these motions until February 6, 2001, immediately prior to the commencement of trial. Bradley contends that the delay prejudiced him by denying him an opportunity to potentially utilize the information he obtained from his examination of these witnesses.
Bradley failed to offer any legal authority, as required by App.R. 16(A)(7), to support his contention that a hearing on his pretrial motions must be held to allow him time for further investigation. The scheduling of hearings on pre-trial matters is a matter left to the sound discretion of the trial court, and here, the court did not abuse its discretion in scheduling this hearing. Accordingly, we reject this assignment of error.
We next discuss Bradley's third and fifth assignments of error as they both relate to an anonymous informant who supplied Bradley's name to Jean Swinson, the Postal Investigator. They state:
 III. THE TRIAL COURT ERRED IN FAILING TO GRANT DEFENDANT'S MOTION TO SUPPRESS IN THAT THE PHOTO IDENTIFICATION WAS BASED ON HEARSAY.
 V. TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO REVEAL INFORMANT.
Bradley argues that because Postal Investigator Swinson obtained his name from an informant, that information constitutes hearsay and the admission of the resulting photo identification therefore violates his Sixth Amendment right of confrontation.
Evid.R. 801(C) defines hearsay as a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.
As a general matter, we first note that at a suppression hearing, the court may rely on hearsay and other evidence, even though that evidence would not be admissible at trial. City of Maumee v. Weisner (1999),87 Ohio St.3d 295, 720 N.E.2d 507, citing United States v. Raddatz (1980), 447 U.S. 667, 679, 100 S.Ct. 2406.
Here, no hearsay problem error existed. The postal investigator used information supplied by an anonymous tipster in compiling the photo array. The state, however, did not offer that information into evidence to prove the truth of the matter asserted; rather, it is Braxton's identification of Bradley as the perpetrator, not the anonymous tipster's allegation of Bradley's involvement, that the state offered in evidence for its truth. Since the declarant, Braxton, testified in court regarding his identification, the court did not violate Bradley's Sixth Amendment rights of confrontation by admitting the evidence regarding the photographic identification. Therefore, this assignment of error is not well taken.
Bradley also maintains that the court erred in denying his motion to reveal the name of the informant, arguing that the duty of disclosure required of the prosecutor by Brady v. Maryland (1963), 373 U.S. 83,83 S.Ct. 1194 extends to evidence that may be used to impeach a prosecution witness, citing case law from several federal courts.
Regarding the prosecutor's duty to disclose, courts have recognized what is referred to as the informer's privilege, which allows the government to withhold the identity of persons who furnish information concerning criminal conduct. See State v. Parsons (1989),64 Ohio App.3d 63, 67, 580 N.E.2d 800. As enunciated in State v. Williams (1983), 4 Ohio St.3d 74, 446 N.E.2d 779, syllabus, this privilege is limited, however, under certain circumstances:
 The identity of an informant must be revealed to a criminal defendant when the testimony of the informant is vital to establishing an element of the crime or would be helpful or beneficial to the accused in preparing or making a defense to criminal charges.
Here, the record shows the defense sought the informant's identity under the confrontation clause suggesting that the informant could be an unindicted suspect or could have made a deal with the prosecutor in exchange for the information. The record shows, however, that the state represented to the court at the hearing that the informant in question was not an unindicted suspect and that the state had not made any deal with the informant. Therefore, Bradley failed to demonstrate, as required by Williams, the vitality of the informant's identity to his defense. Accordingly, this assignment of error is overruled.
Bradley's fourth assignment of error states:
 THE TRIAL COURT ERRED IN REQUIRING SUA SPONTE THE ANONYMITY OF THE JURY.
Relying on the appellate court's opinion in State v. Hill (2000),136 Ohio App.3d 636, 737 N.E.2d 577, Bradley claims the court committed a structural error in its use of an anonymous jury in violation of his fundamental rights to a fair trial and that this structural error warrants an automatic reversal.
Bradley's reliance on the appellate court opinion in Hill is misplaced. That opinion has been reversed by the Supreme Court of Ohio in State v. Hill (2001), 92 Ohio St.3d 191, 196, 749 N.E.2d 274, where the court reasoned that there is no unqualified constitutional right to know the identity of jurors and found no structural error in the use of an anonymous jury in that case. The Ohio Supreme Court took into consideration the trial court's explanation to the veniremen that anonymity was the rule for all trials in that court and that anonymity was not being invoked to prevent them from being harmed by the defendant; it also referenced the extensive voir dire of the potential jurors by the court and the lack of indication from the record that the defense counsel's efforts to seat an acceptable jury were impeded by the unavailability of the names and addresses of the jurors. Id. at 200, 794 N.E.2d at 283. In fact, not only did the court find no structural error there, after conducting plain error analysis, it found no error at all.
Similarly, in this case, we reject Bradley's claim that the use of an anonymous jury in his trial constituted a structural error warranting automatic reversal. Indeed, as in Hill, we find no err or under a plain error analysis in the court's use of anonymous jury in the instant case. As the record reflects, prior to conducting voir dire, the court, without an objection, ordered the following:
 No copies are to be made of the jury list. No notes are to be taken off the jury list as far as people's identifying information. Jurors are to be addressed by number only.
* * *
 Just make sure you return the list to me at the break. (Tr. 55-56).
This instruction constitutes the entire basis for Bradley's claim of an anonymous jury. In this case, unlike the facts in Hill, the record does not indicate that the jurors even knew about the court's order for their anonymity. Moreover, the record further reflects that the court and counsel conducted an extensive voir dire of the jurors, using numbers instead of names.
Furthermore, Bradley fails to demonstrate how his counsel's efforts to empanel an impartial jury were in any way impeded by not using the jurors' names. Thus, here, as in Hill, we fail to perceive the existence of error. Accordingly, we overrule this assignment of error.
Bradley's sixth assignment of error states:
 THE TRIAL COURT ERRED IN EXCUSING A JUROR AFTER THE JURY HAD RETIRED TO BEGIN DELIBERATIONS AND THE ALTERNATE JURORS HAD BEEN EXCUSED.
Bradley complains that the court excused a juror and substituted that member of the jury with an alternate juror after the jury had begun deliberations in violation of R.C. 2313.37(D), which permits a court to discharge a juror [i]f before final submission of the case to the jury * * * a regular juror becomes unable to perform his duties, incapacitated, or disqualified.
A careful reading of the record rebuts Bradley's claim that the court excused the juror after the jury had begun deliberations. The trial transcript shows that at the end of the morning session on February 12, 2001, the court charged the jury and then announced: Ladies and gentlemen, this case is now in your hands for a verdict. A supplemental trial transcript shows that after the jury left the court, the bailiff brought Juror No. 10 back into the courtroom, at which time the court stated:
 Juror Number 10, the bailiff told me that you indicated to her that you believe you might know Mr. Bradley, Senior.
 JUROR NO. 10: I'm not sure. If I can just he looks familiar to me like I said previously.
The transcript shows the court then questioned the juror extensively about the source of the claimed familiarly and subsequently excused Juror No. 10. The transcript then reflects the following:
 THE COURT: Counsel, we will call for Alternate No. 1, who's waiting on the fourth floor until we can resolve this question.
 When they get back from lunch, we will seat Alternate 1 in seat number 10. So I will need you here in about 15 minutes.
MR. BUTLER: Who is Alternate 1, Judge.
THE COURT: The lady. Blondish hair.
* * *
(The jury entered the courtroom.)
* * *
 THE COURT: Ladies and gentlemen, you may be seated. All right. You have been charged with the instructions, and after the charge, the court had removed Juror No. 10 on its own motion with the consent of counsel. So we need at this point to set Alternate 1 to seat 10 so you may begin your deliberations. So, Alternate 1, if you would please move to seat 10. Thank you very much for waiting, Alternate 1, for us. And you are now a member of the deliberation panel.
 Ladies and gentlemen, I have given you your instructions verbally on the record.
 They will be sent back to you in written form as we send you formally the exhibits and the instructions so you can begin your deliberations. (Emphasis added.) (Supp.Tr. 14-15.)
Thus, a careful review of the record establishes that the jury began its deliberations only after the alternate juror had been seated. And, as the decision to disqualify a juror is a discretionary function of the trial court, Berk v. Matthews (1990), 53 Ohio St.3d 161, 168,559 N.E.2d 1301, the court is well within its discretion to dismiss the juror after a voir dire as to any potential bias. Finally, we recognize that despite the exercise of its discretion in excusing Juror No. 10, the record reflects the court removed Juror No. 10 with the consent of counsel. Accordingly, this assignment of error is not well taken.
Bradley's seventh assignment of error states:
 TRIAL COURT ERRED IN POLLING THE JURY BEFORE READING THE VERDICT.
Bradley complains that the court erred in polling the jury before reading the verdict, in violation of Crim.R. 31(D).
Crim.R. 31(D) governs the polling of jury, stating:
 (D) When a verdict is returned and before it is accepted the jury shall be polled at the request of any party or upon the court's own motion. If upon the poll there is not unanimous concurrence, the jury may be directed to retire for further deliberation or may be discharged.
Here, the record indicates that the court polled the jury before reading the verdict in open court. While this order of events is unusual, we recognize the import of Crim.R. 31(D) is to ensure the unanimity of the jury verdict. Normally, after a verdict has been returned and read in open court, jurors are asked if, in fact, the jury verdict as read is the one they individually returned. The sequence of polling the jury before reading the verdict does not run afoul of Crim.R. 31(D) in this instance because all that the rule requires is for the court to poll the jury for unanimity prior to accepting it. In addition, no objection to the court's procedure appears in the record, which would have given the trial court an opportunity to correct the matter at the time. Further, we do not know, for example, if the court may have gestured to the jurors by holding the verdicts, asking them if these were their verdicts. Accordingly, we overrule this assignment of error.
Bradley's eighth assignment of error states:
 THERE IS INSUFFICIENT EVIDENCE TO SUPPORT THE CONVICTION AND SAID VERDICT IS AGAINST THE WEIGHT OF THE EVIDENCE.
Bradley maintains that the jury's verdict is unsupported by sufficient evidence and also that it is against the manifest weight of the evidence. We consider these two claims in turn.
As to the claim of insufficient evidence, Crim.R. 29(A) states, in relevant part:
 The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses.
The test for sufficiency raises a question of law to be decided by the court before the jury may receive and consider the claimed offense. In State v. Martin (1983), 20 Ohio App.3d 172, the court summarizes the standard of review for an insufficiency claim:
 * * * [T]he test is whether after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. The claim of insufficient evidence invokes an inquiry about due process.
 It raises a question of law, the resolution of which does not allow the court to weigh the evidence. (Citations omitted.)
Here, the state produced the victim, who made a photographic identification of Bradley as the perpetrator from a photo array and who again identified him in open court as the individual in a postal uniform who forced him into his house, handcuffed him and removed items from his house. Given this evidence, and viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, we conclude any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. Thus, Bradley's conviction is sustained by sufficient evidence.
We next consider whether the jury's verdict is against the manifest weight of the evidence. Our review of the claim involves a different test. In State v. Thompkins (1997), Ohio St.3d 380, 678 N.E.2d 541, the court cited Martin for its summary of the standard of review for a manifest-weight claim:
 * * * The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. (Citations omitted.)
Furthermore, we are mindful that the weight of the evidence and the credibility of witnesses are primarily issues for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus. We also recognize that the trier of fact is entitled to believe or not to believe all, part, or none of the testimony of the witnesses who testify at trial. State v. Antill (1964), 176 Ohio St. 61,197 N.E.2d 548.
Here, we recognize that the state's evidence of Bradley's guilt consists solely of the identification by the victim three months after the crime. We note, however, that the jury knew of the lapse of time between the crime and Braxton's photo array and in-court identification, as indicated by the following testimony by Braxton on his direct examination:
 Q. Okay. How sure are you that it's the same person in that photograph as Joseph Bradley, is the same person that came to your door with a postal uniform on, with a gun; how sure are you of that?
A. I'm sure.
Q. You're positive?
A. Yes.
 Q. Well, [the photo identification has] been some months later; isn't that right?
A. Yes.
Q. It's about a year later now; is that right?
A. Yes.
Q. What makes you so sure?
 A. I just remember. I mean, it was a traumatic experience. I just the face just sticks out.
Q. His face sticks out in your mind?
A. Yes. (Tr. 416.)
The record also reveals that defense counsel vigorously cross-examined Braxton by exploring various factors that may cast doubts on the accuracy of his identification, including Braxton's opportunity to see Bradley and the visibility in the various areas of the house. Counsel, in fact, elicited from him testimony that he had looked at Bradley for a total of seventeen seconds during the incident. The defense counsel also intimated that Braxton may have been motivated to identify Bradley by insurance consideration because he questioned him about the fact he had made claims for his loss. In addition, the record reflects that Bradley presented alibi evidence, which the jury rejected.
We are not persuaded that the trier of fact, in resolving conflicts in the evidence in the instant case, clearly lost its way and created such a manifest miscarriage of justice that Bradley's conviction must be reversed.
Bradley's ninth assignment of error states:
 DEFENDANT'S CONVICTION MUST BE SET ASIDE BECAUSE COUNSEL'S ASSISTANCE AT THE TRIAL WAS INEFFECTIVE.
For this claim, Bradley alleges sixteen instances of deficient performance by counsel.
To sustain his claim that his counsel had been ineffective, Bradley must demonstrate that trial counsel's performance fell below the objective standard of reasonable competence under the circumstances and there exists a reasonable probability that, but for such deficiency, the outcome of the trial would have been different. See Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2050; State v. Bradley (1989), 42 Ohio St.3d 136. Furthermore, strategic or tactical decisions made by defense counsel which are well within the range of professionally reasonable judgment need not be analyzed by a reviewing court. Strickland, supra. As the court stated in State v. Hutton (1990),53 Ohio St.3d 36, 559 N.E.2d 432, citing Strickland:
 We must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance * * *." Especially on direct appeal, that presumption is not easily overcome. The record does not show counsel's thought processes, nor does it show a failure to "make reasonable investigations * * *. (Citations to page numbers omitted.)
Here, Bradley complains that his defense counsel failed to object to the hearsay evidence by which the photograph of defendant was introduced into evidence; that he distanced himself from Bradley during the voir dire by commenting that he was just doing his job in defending Bradley; that he failed to object to the presentation of Jean Swinson as a witness when her name had not been provided in the discovery response; that he failed to continue trial after the suppression hearing to allow himself time to investigate the information he obtained there; that he failed to allow Bradley to testify in his own behalf; that he failed to focus the alibi witness testimony to the exact time of the incident; that he failed to explore any interest such as that in insurance recovery the victim may have had in the outcome of the case; that he failed to focus on the fact that Braxton had lived on a street near the victim's house and therefore Braxton's identification could have been a result of his familiarity with Bradley's face; that he failed to argue the lack of proof on issue of the operability regarding the gun specifications; that he failed to explore with the testifying officers the condition of the snow, auto tracks, and foot prints; that he failed to subpoena Bradley's photo at the time of his arrest; that he instructed Bradley to shave his face after the first day of trial, allegedly leaving Bradley vulnerable to a suggestion that he changed his appearance; that he failed to argue the identification issues according to the pertinent factors; and finally, that he failed to explore a discrepancy in Braxton's testimony and the fact that Braxton had guessed in several of his answers.
Regarding counsel's failure to object to the state's presentation of Jean Swinson as a witness at trial because her name did not appear on the witness list filed by the prosecutor on October 16, 2000, our review of the record indicates that on November 28, 2000, the prosecutor filed a motion to seek continuance of trial, stating Postal Inspector J. C. Swinson is an essential witness for trial and will be unavailable to testify on the scheduled trial date. Thus, the record shows Bradley had knowledge of this witness at hand two months before trial, despite the omission of her name from the witness list.
Regarding counsel's failure to argue the lack of proof on the issue of operability of the firearm on all the gun specifications, we observe that R.C. 2923.11(B)(1) defines firearm as "any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. Furthermore, R.C. 2923.11(B)(2) provides that "when determining whether a firearm is capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant, the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm. In State v. Thompkins, 78 Ohio St.3d 380, 678 N.E.2d 541, the court stated, in paragraph one of its syllabus:
 A firearm enhancement specification can be proven beyond a reasonable doubt by circumstantial evidence. In determining whether an individual was in possession of a firearm and whether the firearm was operable or capable of being readily rendered operable at the time of the offense, the trier of fact may consider all relevant facts and circumstances surrounding the crime, which include any implicit threat made by the individual in control of the firearm. (Citations omitted.) (Emphasis added.)
In State v. Reynolds (1997), 79 Ohio St.3d 158, 679 N.E.2d 1131, the court reaffirmed its holding in Thompkins, and stated that Thompkins clarifies that actions alone, without verbal threats, may be sufficient circumstances to establish the operability of a firearm. Id. at fn. 3. (Emphasis added.)
Here, Braxton testified that as he opened the door, the male in the uniform stuck a gun in his stomach and told him to get inside the house, and further accompanied him at gunpoint to the basement. There, he told him to keep his head to the floor and, later, ordered him to walk upstairs and to lie on the living room floor. In conformity with Reynolds and Thompkins, these actions constitute sufficient relevant factors and surrounding circumstances to establish the operability of the firearm. Therefore, this claim is not well taken.
Regarding the remaining claims, we have previously rejected Bradley's challenges to what he deems hearsay and to the scheduling of the hearing on the motion to suppress; we do not perceive defense counsel's address to the veniremen as distancing himself from his client, nor do we consider the statements to be improper. We recognize defense counsel did explore the insurance recovery issue; we regard the possibility that Braxton may have been familiar with Bradley as unsupported by credible evidence in the record and therefore speculative at best, and we find that the remaining issues the accused taking the witness stand, the focus of an alibi witness, counsel having his client appear clean-shaven in court, his style of argument on identification, and his manner of cross-examining the victim are all parts of trial strategy that do not form the basis of a successful ineffective-assistance-of-counsel challenge and need not be analyzed.
In State v. Kole (2001), 92 Ohio St.3d 303, 750 N.E.2d 148, the court there overturned a conviction where defense counsel failed to raise a statutory defense which could have affected the outcome of the case. There, the court found the outcome of the case could have been affected. Having reviewed these claims of alleged instances of deficient performance, they either involve a strategic decision within the range of professionally reasonable judgment or they do not fall below the objective standard of reasonable competence. As guided by Strickland, we have concluded none of the alleged failures rises to the level of the kind of counsel deficiency illustrated in Kole to justify the result reached by the court in that case.
From our review of the record, we have concluded that Bradley failed to meet the Strickland requirement of demonstrating that there is a reasonable probability that, but for these deficiencies, the outcome of the trial would have been different. This assignment of error is overruled.
Bradley's tenth assignment of error states:
 THE VERDICT IS UNRELIABLE BECAUSE OF THE APPEARANCE OF IMPROPRIETY BETWEEN THE PROSECUTOR AND DEFENSE COUNSEL.
Bradley alleges that the prosecutor has a part-time practice, which he operates out of defense counsel's office. We are troubled by this alleged appearance of impropriety. However, Bradley raised this allegation for the first time in his appellate brief, de hors the record; therefore, we are unable to evaluate the extent of the relationship or to consider what effect it may have had on the case. We therefore reject this assignment of error, noting, however, that Bradley may have recourse by filing a post-conviction relief petition and presenting evidence of the relationship to the trial court, where a record can be made in order to determine whether or not this is a basis for challenging the verdict returned in this case.
On the basis of the foregoing, we affirm the judgment of the trial court.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANNE L. KILBANE, J., CONCURS, JAMES D. SWEENEY, P.J., CONCURS IN PART AND DISSENTS IN PART (SEE DISSENTING OPINION ATTACHED).